Good morning, your honors. If it pleases the court, James Boehm for the appellant, Roller Bearing Companies of America, Inc. And, your honors, this case does not involve a dispute over statutory construction or a dispute as to what the law is. It's really a factual dispute. So I'm going to limit my argument to some specific points in the brief without intending to waive any of the arguments in the brief. I think the brief set forth the positions pretty well, but I want to really highlight what I think is a significant error of the trial court below in granting the summary judgment motion against my client. The parties entered into a stock purchase agreement in 2006, one of the terms of which was, the company is the owner of all rights, title, and interest in and to each of its intellectual property assets, free and clear of all liens, security interests, charges, encumbrances, equities, and other adverse interests, and has the right to use without payment to a third party of all of the intellectual property assets. So that's an affirmative representation that was made. Part of the deal was there were notes and there were some issues regarding whether or not we were paying on the notes and we get sued. In a counter claim, we assert, and the counter claim was filed in January, on January 23rd, 2013, that Rankine and Stanton represented the intellectual property assets that All Power owned were free and clear of any encumbrances. That's on page 4 of our counter complaint. We assert on page 5 at line 5 that All Power had the ability to transfer this intellectual property to Rankine and Stanton without any allegations whatsoever. Also on page 5 of the counter complaint at lines 11 to 12, Rankine and Stanton did not provide 100% of All Power's intellectual property assets free and clear to RBC. And again, these types of allegations are made at page 21 and under the various causes of action, page 23, page 27. Anywhere in the counter claim do I find anything relating to Boeing or PMAs? You don't, Your Honor, and that's because at the time the counter claim was filed, we didn't know about the Boeing claims. And so I think that... You had some due diligence you did before you finalized the transaction, did you not? Well, in the asset and the stock purchase agreement, we are not obligated to do a due diligence, and had we done and gone out and looked through FAA files and public records, could we have found it? Possibly, but they had an affirmative duty to tell us what they knew about it, and the contract specifically says we have no duty to do a due diligence. That's why you get reps and warranties. If I want to buy something from you, you're selling me M&Ms, and there's a container of them over there, and I want you to warrant their green M&Ms, and you give me a representation. So what rep and warranty did they violate here? They said they were giving us the intellectual property free and clear of all encumbrances without payment to any third party. So the real issue comes down here, is that the court, in granting the summary judgment motion, said that that was a new theory that was not asserted in the counter complaint. But I just showed your honors that it was actually asserted in the counter complaint, and we're a notice pleading theory of pleading. You have to put the other side on reasonable notice of the claims that are being made. Now, we didn't know about the banning issue at the time we filed the counter claim, so we couldn't have specifically identified it, but I don't believe we needed to specifically identify it. Then we get down to June 5th of 2013. We learn about this claim right around early June, late May of 2013. On June 5th of 2013, before the summary judgment motion is filed, Mr. Hicks and I attend the deposition of my client, Mr. Williams on the East Coast, where he tells him I've just learned of this issue. All this is in the record. He goes on and lengthens his deposition about this PMA issue. He learned that Boeing was now making a claim for royalties. We then have on July 2nd, 2013, Mr. Hicks serving a subpoena on Boeing, in response to which Boeing provides a letter. Again, all in the record, page 756. The appealee points out one paragraph of the letter that says no actual royalty agreement had been entered into, but they fail to direct the court's attention to the very next paragraph that forwards communications regarding negotiations regarding the royalty agreement. So this is an issue that's fresh off the grill, so to speak. Boeing is approaching RBC saying that, look, you're using this property that is our technical, we have the rights to, it's our intellectual property, and you need to pay us a royalty, and they're in the processes of negotiating that. That letter is on 8-26-13. One month later, approximately, on 9-19-13, they file their summary judgment motion. So this wasn't some sandbagging, this wasn't some surprise. Within one week of our discovering the issue, we made it known to them. They had ample opportunity to do discovery on it. Then on 10-7, they take the deposition of Mr. Gostomsky for the second day, and the better part of 130 pages of testimony is directed to this very issue. So for the court to say that this was a new legal theory being raised in the case was just pure error. It may have been new at that point, but it may have been on sufficient notice. So what about the merits of it? The merits of that issue? The merits of that issue are there is a royalty agreement that's entered into now, and we're having to pay Boeing money for the sale of these parts. And so there is a factual issue as to what our damages are in connection with... Factual issue as to whether there was any misrepresentation or actual breach with regard to these agreements, which are not licensing agreements and which could have been discovered and which were, I gather, from although I know nothing about this world, available on the FAA's website or discoverable through them. Well, part of the reason you asked for reps and warranties, and again this is explained somewhat by Gostomsky and Williams in their depositions, RBC's normal practice is to never do a stock purchase, and they do asset purchase. In this case, Rankine wanted a stock purchase for tax purposes. And to do that, we wanted to have extra reps and warranties because of the potential liability that comes about from that. And there's no obligation to do a due diligence if you have reps and warranties and you have contractual promises that you don't have to do a due diligence. So in other words, again, the green M&Ms, I don't have to look in the box to see if they're green if you're promising to me that they're green. Well, if you're looking for green M&Ms or licensing agreements, there were no licensing agreements between Boeing and All Power, were there? No, there were what was called technical assist letters. So our complaint is that you, Rankine, or you All Power people, told us that you had the rights to sell these parts free and clear without us, our obligation to pay any third party. And that wasn't true because part of the ability to sell those parts was based upon the technical assist letters from Boeing that they never disclosed to us. And as the declarations explain, there are multiple ways that you can get PMA part manufacturing approvals, and one of them, which is through a technical assist letter. So they didn't disclose that these parts were manufacturing under technical assist letters from Boeing, which would have cued us off to the fact that, oh, Boeing has a... I'm backing up to the question of what's properly in this case at this point. This is a counterclaim which, if it were a separate counterclaim, there might be a limitations period problem, wouldn't there? Well, I don't think so because in the contract it says these claims can be brought at any time. So I think it's a contraction of which. What are these claims? Claims relating to the property, the rights of the intellectual property. But in any event, because it is a counterclaim, you can always have equitable offset if the statute is passed. And I don't think that's been addressed in the brief, but if the statute is passed, you can use the statute, use a claim, even if it's barred by the statute, to offset affirmative recovery from the other side. Although the whole issue at the front end is whether you have any offsets, and the answer was no. Whether we what? Have any offsets. In other words, the front end issue that generated this lawsuit to begin with is the fact that you were claiming offsets, and the district court concluded that you had no right to claim offsets, although you did brief that, you're not arguing it here. Right, and I can address it briefly, and as Judge Gonzalez found, that our interpretation of the agreement of the offsets is consistent with the contract. So that really is another factual dispute. Even though the note said that without offsets of any kind or nature, the fact that the Williams Declaration, and again I think the court on the summary judgment motion got it wrong saying we submitted no evidence when the Williams Declaration actually did say that no, it was intended to limit to those four issues. But again, I wasn't planning on arguing that point. We think the court erred on that, and as Judge Gonzalez said, that that is a factual issue, that it could be consistent with it. But we can't rely, you can't rely on the general counsel's declaration. That's not what the 2009 amendment says. Maybe what he intended it to say, my viewpoint frankly is, maybe you have a beef with your general counsel, but if you just read that the way the district court did, I think the district court got it right. Otherwise we could have the authors who negotiated any agreement saying, no I meant blue, no I meant red, oh we've got to question the fact. Well no, not when the language is pretty clear on its face. And here it's pretty clear. And even if you have the agreement that says without offsets of any kind, it doesn't mean we can't defend against the case by saying that performance was excused because of their material breach of a contract. So offsets are different than excuse, and different than waiver, and different than release. So even if the note is interpreted as the district court found in the summary judgment motion that we cannot assert offsets, it doesn't mean that we wouldn't have other defenses to the note. And which we believe because of their material breach of contract and not one disclosing the TSAs that Boeing had, and number two in not, in misrepresenting that we could take all of the intellectual property rights without payment to any third party that that is a material breach of the contract on their part. What parts of the intellectual property part of the statute, of the contract you're relying on, I'm not looking at. At 3.22 intellectual property. If you look at page 86 of the record on appeal, and I just have the one page. I'm not looking at that, I'm looking at the actual agreement where it says 3.22 intellectual property. And that's the right section? It's under C, know how necessary for business, and I have the page but I don't have the section number. Know how necessary for business, okay I have that. And you see at the bottom part of that, where it says the company is the owner of all right title and interest, in and to its intellectual property assets, free and clear of all liens, security interests, charges, encumbrances, equities, and other adverse claims. But intellectual property assets is defined, right? And it doesn't seem to encompass this. It would encompass that because it's the rights to manufacture a part. All right, where? Show me where it is. Well, I don't have the whole agreement in front of me. If you want me to submit a post argument brief pointing out where that's defined. Well, I can read you what it says that's relevant here. All know how confidential information and data, customer list software, technical information, process technology, plans, drawings, product numbers, and numbering systems, and blueprints, all used or licensed by the company as licensee or licensor. And I understand the argument to be it's none of these. These letters are none of these. So these TSAs from Boeing are intellectual property rights. Well, their intellectual property rights may be writ whole, but there's a definition of intellectual property in this contract. So they're saying that. I understand that you're saying it's not in the definition. Well, I think if you look at the agreement as a whole, it is included in it. And I do have less than two minutes. I would like to reserve time for rebuttal. Thank you, Your Honors. Good morning, Your Honors. Clayton Hicks for the appellees and plaintiffs. The plaintiffs have been trying to collect on these notes for now almost ten years. Every time the notes come due, RBC makes a different excuse as to why it shouldn't have to pay. Did you conceal the Boeing situation? That's what his primary argument at least today is. What counsel failed to tell you, he did recite some of the facts in the record, but what he said was that the claim was first revealed at a deposition in June. That was the first time we had heard of it. June of 2013? I believe so. We served discovery interrogatories asking them for their legal contention as to how the facts recited at the deposition constituted a legal theory. And the theory provided in response to the interrogatories was that the plaintiffs failed to disclose existing licensing agreements that required the payment of royalties. We served a subpoena on Boeing. Boeing said there are no such agreements. We move for summary judgment. Then you have this new theory that you've just heard about today, which is that no, no, it's not the existing royalty agreements we're talking about. We're negotiating and we might have to pay royalties in the future. Did you disclose the PMAs before? I'm sorry? TSAs. PMAs? Well, I'm not... Did you disclose your relationship with Boeing during the negotiations? In the underlying contract, there were requirements to list certain agreements with Boeing. There were what are called TSOs, PMAs, and we did list all of the TSOs. Thank you. So anyways, back to the point being that when we first heard that the actual argument is not that there are existing agreements, but that we're negotiating we might have to pay, that was raised for the first time in summary judgment. And now, yet just today they've changed it again. This is not in the papers. What he just told you today is now we actually do have an agreement and we actually are paying royalties is what he just said. That's what he said in discovery. That's what we defeated but presented to the court as defeating that point. He said no. RBC said no. That's not our theory. It's we're negotiating. Now today he's saying, counsel's saying, just kidding, we do have an agreement now. So yet again It's clarifying and I think I'm going in the same place that Zaharia was. What is your contention, aside from this argument about was it properly in the case or not properly in the case, if it were properly in the case, what is your contention about why there was no disclosure requirement? The legal theory that was advanced that the district court did not consider was that we are in the process of negotiating a licensing agreement that will require the payment of a fee. That's the legal theory. My understanding more specifically is that there were these letters, these TSAs is that what they're called? TSOs. TSOs are technical standard orders. There's a TSO and a PMA. TMA are the letters that Boeing wrote that enabled you to get the other ones. Is that right? No. A PMA is issued by the FAA. A lot of acronyms. The FAA issues PMAs. The PMA is obtained in a variety of different ways, one of which is having Boeing write you a letter saying here are the specifications. And what's the acronym for the letter? ASSIST letter. And that's what they're complaining about now, right? It's unclear. They seem to be complaining about all three. They're complaining about something one day, something different the next day, and here we are today, now we're back to the first one. So let me ask you straightforward here. During the disclosure period, prior to the signing of the agreement, did you provide them with copies of or alert them to ASSIST letters, TSOs, PMAs? Three questions. I honestly don't know. That is not in the record. I know that in the disclosure schedule that would be attached to the agreement, there are lists of Boeing authorizations for TSOs. PMAs, I'm not sure. It is a matter of public record. They're all attached to the...it's all in the record. So I just don't know if it's before you, the extent to which they are required to be disclosed, because in the contract provision that you cited, it provides having to disclose to know how necessary to operate the business. I don't believe the record before you discloses that it's required or that they're even used. Well, for some reason, Boeing wanted to negotiate a licensing, a royalty agreement, something they didn't have with you, right? You did not have a royalty agreement with Boeing. The plaintiffs in 2006, at the time they sold, it's not in the record. I just don't know. Well, if you did, you would have had to disclose it. And they're not arguing that you didn't disclose that, as I understand it. If there were such an agreement, I don't know whether or not it should have been disclosed. I don't believe there was such an agreement. And the reason is, we subpoenaed Boeing and asked them what licensing agreements exist, and they said there are none. There are none. The record doesn't tell us why Boeing decided then, after the sale, to negotiate a licensing agreement with the new buyer, with the new company. So far, you haven't said, or at least you've been a little fuzzy about whether it is your position that these Boeing letters are or aren't covered by the intellectual property assets definition in the contract. Sorry? I don't believe they are. They do not constitute. They are or they are not? They are not. Is that your position? They are not. That seems like an important position. I understand you don't think it's in the case. But if they weren't covered by the intellectual property assets, wouldn't you have to worry about whether it's properly in the case? Because they lose. They are not intellectual property. They are a part of the record. But they may not be intellectual properties defined in this. I don't think it's intellectual property in any capacity. It's simply a letter. Well, but they're getting money for it, I gather, no? No. The theory advanced to the trial court was that we are negotiating an agreement and we might have to pay in the future. Well, I understand that, but presumably it's because Boeing is of the view that it is, in some sense, intellectual property. Not necessarily, because at deposition, when I asked the corporate counsel, I said, is Boeing threatening to revoke these assist letters if you don't agree to pay the royalty? And he said, we haven't gone there yet. So I don't even think the record before you could support that, because Boeing has... It seems to me you're being evasive for no good reason. Unless you think there's more wrong with your position than appears. I'm sorry, maybe I don't understand the question. Well, the question is very simply, if these letters are, in fact, have, in fact, resulted in royalties, is it all just, no, never mind, because they're not intellectual property assets as defined in the contract? And I think the problem is that that issue simply was not briefed. Well, I thought it was briefed, but okay, fine. I just want to bring, if I can bring back, bring us all back, the standard here is an abuse of discretion. Did the district court err by failing to consider this theory? I don't think we even need to get to the merits of this. They did not disclose this theory. They certainly didn't do it in the complaint, because by counsel's own admission, it didn't arise until after the complaint was filed. The theory asserted in discovery was different than what they relied on in opposition to the motion. And in the Coleman case, we all agree the Coleman case controls, and under Coleman, the district court could not have erred by refusing to consider it. And if we have to, or we feel we must consider it, your opponent's argument is your client made a material breach of this contract by failing to disclose something with Boeing. Why is he wrong? Because in order to have a breach, you have to have some sort of damages. That's one of the elements. The claim is that we might have to pay in the future based on an agreement that does not yet exist. So let's assume for argument that there was a breach, or I'm sorry, that there was a misrepresentation. You can't have a breach unless there's an actual agreement that requires the payment of fees. The claim is not ripe on its face. Anything else you want to argue? No, thank you. Unless you have any other questions. Just to address a few of his points, I disagree that we've changed our theory on this PMA issue. In Mr. Williams' deposition, he said he had just been contacted by Boeing and he was in negotiations. So he didn't say we have a royalty agreement right now. He said they're asking for one and we're in negotiations regarding it. They did not disclose the TSAs. The evidence in the record is in Mr. Gostomsky's declaration and in Mr. Williams' declaration where they said they did not disclose this to us. They did not disclose that the TSA approval is from Boeing. You have not alleged, and you still don't allege, as I understand it, that they were paying Boeing or ever paid Boeing anything for those letters. I ask you a specific question. Did you ever claim or do you contend or is there anything in the record that suggests that they ever paid Boeing for the letters? Not that they actually paid Boeing, but that Boeing was approaching them and requesting payment. So not that the payment had actually been made. So you allege that at the time they sold it to you, Boeing had approached them to request payment? Oh, no, no, no. So what we assert is that it wasn't until this May, June of 2013. They were approaching you, they weren't approaching them. Correct. Things changed after you bought the company, right? Boeing changed its relationship or wanted to change its relationship. Why is that their fault? It's their fault because they knew that the rights to sell these parts were based upon Boeing intellectual property rights for which at that time Boeing wasn't charging them. But they knew that Boeing had a right to charge them and they knew that Boeing had the ownership interest in them. Has that been litigated? The problem with this coming late in the case, was it ever litigated whether they knew that Well, if you look at the declarations of Williams and Gostomsky, they talk about they would have known because they knew that they had technical assist letters to get the permission to have the PMAs. But that doesn't, I mean, whether Boeing can retroactively charge for those letters is not a self-evident proposition, is it? One would think that if you got letters to do something and they wanted to charge for it, they'd charge for it at the time you did it. If you look at the Williams declaration, it does put forth evidence that this is intellectual property rights of Boeing for which they could charge for and that's why this isn't a proper for summary judgment because there's all these factual issues What did they know? When did they know it? We're asserting that they knew it, they didn't tell it to us and now we're having to pay for these rights and I'm over my time. I'm happy to address any questions. The case of Rankin vs. Rollerbearing Company is submitted and we are adjourned for the week.
judges: Gould, Berzon, Zouhary